UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIE GOOD,
    Plaintiff,

v.   CIVIL ACTION NO. 19-11983-IT

BAY COVE HUMAN SERVICES, INC.,
    Defendant.

REPORT AND RECOMMENDATION ON DEFENDANT, BAY COVE HUMAN SERVICES, INC.'S MOTION TO DISMISS (#7).

KELLEY, U.S.M.J

I. Introduction.

Willie Good makes claims of employment discrimination against his former employer, Bay Cove Human Services, Inc. Good, who is African-American, alleges that his supervisors discriminated against him on the basis of race, which caused him to terminate his employment with Bay Cove. He now brings both federal and state law claims for constructive discharge and retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and Mass. Gen. L. c. 151B, § 4. Pending before the Court is defendant's motion to dismiss the complaint for failure to state a claim. For the reasons that follow, the Court recommends the motion be allowed in part and denied in part.

II. Facts.

The facts are taken from the complaint and documents appended to it. Good was employed as a program manager at Bay Cove until his resignation on February 13, 2018. (#1-2 at 20.) He

1

alleges that on January 23, 2018, his direct supervisor, Katie Nadeau, assigned him a project with an unrealistic deadline, telling him to "do these things or you will be fired by 2/17/2018." *Id*. at 3. The next day, Good emailed Jennifer Greene of Bay Cove's Human Resources ("HR") Department, claiming that Nadeau discriminated against him based on his race, creating a hostile work environment.[1] *Id*. at 6. To address his concerns, Greene and HR Director Emma Concepcion decided to schedule a meeting with Good. *Id.*

On January 29, 2018, Good found a note in his office that said, "N***** . . . . Good try. Bye Bye Soon N*****." *Id*. at 11 (bowdlerization added). Good reported the note to Greene. *Id*. at 10. Later that day, Good met with Greene and Concepcion as scheduled to discuss Good's concerns about Nadeau, as well as the derogatory note Good had found earlier that day. *Id*. at 6. That same evening Good emailed Concepcion, writing:

> You never mentioned why has my job description randomly changed . . . . [I]n the 1/29/18 meeting you mentioned for me to contact Katie per protocol in regards to the [note] I discovered. Really? To insist that I communicate with her in regards to that awful [note], especially in the midst of this investigation, is like asking a rape victim to communicate with the probable rapist . . . . Also, do you really want me to meet with Katie for my weekly supervisor meeting and go about interacting with her as if there is no investigation, when for all I know she could of wrote that [note]? . . . . Why are you punishing me? All I did was report the facts.

*Id*. at 12.

Two days later, on January 31, 2018, Concepcion emailed Good to explain that "[t]he first job description was for a position in the team where your aunt is receiving services. This is a conflict, so we moved you to an available opening – the second job description." *Id*. at 13. Concepcion added that "we continue to research the items you brought to our attention Monday.

---

[1] On January 25, 2018, Good forwarded Greene an email stating, "[this] is an email threat in regards to my last face-to-face meeting with Katie. During this meeting is where her discrimination ballooned to what I consider as a hostile work environment . . . ." *Id*. at 8.

I'll be in contact shortly with an update." *Id.* The next day, February 1, 2018, Good reported to Concepcion that he had found a second threatening and racially-charged note in his office, this one stating "n***** give it up." *Id.* (bowdlerization added).

The following week, on February 6, 2018, Concepcion, Chima Andalcio, and Kristen Falvey, who supervised Nadeau and Andalcio, met with Good to address his concerns about Nadeau. *Id.* at 1. At the meeting, it was proposed that Andalcio replace Nadeau as Good's immediate supervisor. *Id.* Two days later, on February 8, 2018, Falvey and Andalcio met again with Good, to discuss the start of Andalcio's supervisory relationship. *Id.* After the meeting, Good emailed Concepcion, stating that Andalcio reassured him that she was open to working with him and that he believed her. *Id.* at 15. However, Good also complained that, where he had previously submitted weekly reports of the days and times he coached Bay Cove clients, Falvey wanted him "to be more specific as to the exact time, exact travel time to and from each client." *Id.* Good questioned whether this was retaliatory and whether Falvey was "setting me up to fail and etc." *Id.*

The next morning, Good emailed Concepcion to tell her that he had found a third "racial note" under his desk.[2] *Id.* at 16. Good stated, "I believe Katie or Kristen wrote this note and left it in my office. Especially after yesterday events." *Id.* Later that afternoon, Good wrote another email to Concepcion saying, "[t]he hostile work environment is mounting to higher level, in the note [] it threaten physical harm to my person . . . . It appears to me that H.R. is assisting the assailants

---

[2] The third note said, "N***** shut up, we don't want your kind Here any longer. Just go away! Make it easy on yourself or we will have to use forse. Hr aint give a fuck and pretty soon you [illegible]. You don't scare with all your big words & email, N***** all you is a n***** in this here business. Many have fail u is next. Don't [illegible] us all you [illegible]. Blackie n***** the more you resist is most we resist N***** bye! All you is a big mouth n***** who aint shut you a problem n*****." (#1-2 at 21 (quoted verbatim, bowdlerization added).)

3

via indifference to my proofs. What are you going to do to better help with this racially threatening notes and are the actions of Kristen retaliatory for my claims?" *Id*. at 17.

On February 12th and 13th, Good informed Andalcio he would be "out sick," and would not go to the office. *Id*. at 18-19. On February 13th, Good emailed Concepcion as follows:

> Kristen is the supervisor of Katie and [Andalcio] and I believed to relocate from my office would did nothing to mitigate the hostile work environment . . . . I was and am emotional distress from all the discovered [notes] . . . . I called out sick starting in 2/12 because I am sure the distresses caused my immune system to weaken, fearing the threats and mounting hostility. In my meeting with you it was mentioned a 'fresh start' to commence on 2/8/18, with [Andalcio] as my new supervisor. However, the hostile work environment increased to the level of physical threat to my person. . . . Due to Human Resource's negligence to remedy the hostile work environment, botched measure to prevent further wanton discrimination and physical threats to my person, and my unanswered retaliatory acts questions, effective immediately 2/13/18 I resign from Bay Cove.

*Id*. at 20.

Good had filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about January 24, 2018. *Id*. at 6.[3] The EEOC issued him a "right-to-sue" letter on July 8, 2019. *Id*. at 36. On September 19, 2019, Good filed this lawsuit, alleging racial discrimination in violation of Title VII and Chapter 151B. (#1-1 at 1.) On November 19, 2019, defendant filed the pending motion to dismiss. (#7.)

### III. Legal Standard.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d

---

[3] The actual EEOC complaint and right-to-sue letter have not been filed as exhibits to the complaint.

4

1, 7 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

IV. Discussion.

A pro se complaint is subject to "less stringent standards than formal pleadings drafted by lawyers[,]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and therefore is liberally construed. *Dew v. City of Bos.*, 405 F. Supp.3d 297, 300 (D. Mass. 2019). In line with this lenient view, although Good has not specifically asserted claims for hostile work environment and retaliation in his complaint, he has alleged enough facts to state plausible claims against Bay Cove under both Title

5

VII and Chapter 151B. The Court shall address these claims in the context of the motion to dismiss.[4]

    A. <u>Hostile Work Environment</u>.

To establish a claim for hostile work environment,[5] a plaintiff must show:

> (1) that [he] is a member of a protected class; (2) that [he] was subjected to unwelcome [racial] harassment; (3) that the harassment was based upon [race]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [racially] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Crowley v. L. L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002); *Nieves-Borges v. El Conquistador P'ship, L.P., S.E.*, 936 F.3d 1, 8 (1st Cir. 2019) (comparable "six elements that generally must be proven to succeed on a sex-based hostile work environment claim under Title VII"). "A hostile work environment claim is premised on an accumulation of individual acts that, taken together,

---

[4] No issue has been raised concerning the exhaustion of administrative remedies. From all that appears, Good filed a complaint with the EEOC as required for Title VII claims. Title VII, as amended, provides that upon filing a charge with the EEOC, if the state has a law prohibiting the alleged unlawful practice, the EEOC shall notify the appropriate state or local officials and afford them an opportunity to act under state law to remedy the practice. 42 U.S.C. § 2000e–5(d). Thus, the court will assume that Good met the requirement of filing an administrative claim with the MCAD as required for Chapter 151B claims when he filed his charge with the EEOC.

[5] "[T]he showing required under Title VII is essentially analogous to that of 151B." *Thirkield v. Neary & Hunter OB/GYN, LLC*, 76 F. Supp.3d 339, 344 (D. Mass. 2015) (internal citation, quotation marks and footnote omitted). Consequently, courts in this district often use a single analysis for discrimination claims brought under state and federal law. *See Ruffino v. State St. Bank & Trust Co.*, 908 F. Supp. 1019, 1047 n.50 (D. Mass.1995) (finding that the same result in plaintiff's discrimination claim was compelled under state and federal law). Further, the Massachusetts Supreme Judicial Court has stated that it is their practice "to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. c. 151B." *Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 397, 636 N.E.2d 265 (1994).

create the environment." *Nieves-Borges*, 936 F.3d at 8 (internal citations and quotation marks omitted); *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 40 (1st Cir. 2011). The harassing environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

In assessing "whether a work environment is sufficiently hostile or abusive, courts must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Lee-Crespo v. Schering-Plough Del Caribe Inc.*, 354 F.3d 34, 46 (1st Cir. 2003) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)); *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 180 (1st Cir. 2008) (citation omitted); *Smith v. Clay Chevrolet, Inc.*, No. CV 14-14027-MLW, 2016 WL 8138606, at *10 (D. Mass. Nov. 17, 2016), *report and recommendation adopted* (Jan. 31, 2017). A single, isolated incident of harassment is ordinarily insufficient to establish a claim for hostile work environment, unless the incident was particularly egregious. *Posada v. ACP Facility Servs., Inc.*, 389 F. Supp.3d 149, 157 (D. Mass. 2019).

Good has stated a plausible claim for hostile work environment based on the alleged offensive racial language and threats contained in the three notes, as well as the alleged unrealistic deadlines that he was given for work assignments, if that can be tied to his race. As an African-American, Good is a member of a protected class who purportedly was subjected to unwelcome racial harassment by means of the three notes he received. The harassment was based upon his race, as the notes included racial slurs. The alleged threats made in the notes and the work disparity, if sufficiently egregious, could constitute a hostile work environment.

Even if the threats alone were not sufficiently severe or pervasive, the cumulative effect of the intimidation, combined with the alleged conduct of Good's supervisors, could have been severe enough to make out a hostile work environment claim. It is also plausible that the alleged conduct was both objectively and subjectively offensive, because a reasonable person would feel intimidated, humiliated, and demeaned by the racial comments in the notes.[6] Furthermore, Good has alleged facts sufficient to support vicarious liability of Bay Cove under both Title VII and Chapter 151B for the alleged misconduct of Bay Cove's supervisory personnel.[7] In short, Good has alleged enough facts to support a plausible claim for hostile work environment.

B. Retaliation.

In addition to proscribing workplace harassment, Title VII and Chapter 151B also prohibit an employer from retaliating against an employee for opposing an unlawful employment practice, such as by filing a complaint. 42 U.S.C. § 2000e-3(a); Mass. Gen. L. c. 151B, § 4. "To succeed with a claim of retaliation in violation of Title VII, a plaintiff must show that (i) [ ]he undertook protected conduct, (ii) [ ]he suffered an adverse employment action, and (iii) the two were causally linked." *Nieves-Borges*, 936 F.3d at 10 (internal citations and quotation marks omitted); *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir. 2006). An employment action is adverse if it would have dissuaded a reasonable worker from engaging in protected activity, such

---

[6] On February 9, 2018, Good emailed Concepcion, "[t]he hostile work environment is mounting to higher level, in the note [] it threaten physical harm to my person." (#1-2 at 17.)

[7] Under Title VII, when a supervisor is responsible for creating a hostile work environment, the employer is vicariously liable for the supervisor's misconduct unless a specific affirmative defense applies. *Gerald v. Univ. of P.R.*, 707 F.3d 7, 19-20 (1st Cir. 2013); *Noviello v. City of Bos.*, 398 F.3d 76, 94-95 (1st Cir. 2005); *Votolato v. Verizon New England, Inc*., No. 16-CV-11663-DPW, 2018 WL 4696743, at *8 (D. Mass. Oct. 1, 2018). Chapter 151B, however, provides no affirmative defense to an employer's vicarious liability for a hostile work environment created by supervisors. *Noviello,* 398 F.3d at 95 (citing *College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination*, 400 Mass. 156, 164-166 (1987)); *Votolato*, 2018 WL 4696743, at *8.

as making a charge of discrimination. *Rodriguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 284-85 (1st Cir. 2014). Being assigned disparate work from similarly situated co-workers can constitute an adverse employment action in support of a retaliation claim. *See id.* at 285-86.

On January 24, 2018, Good reported to HR, "I experience discrimination based on my race . . . to the level where it creates a hostile work environment . . . at the hands of my direct supervisor."[8] (#1-2 at 6.) Good also informed HR that he had submitted an official discrimination complaint with the EEOC, which, of course, is protected activity. *Id.* Although Bay Cove quickly engaged in a number of remedial measures to address Good's concerns, Good alleges that he suffered an adverse employment action as a result of filing the complaint, as he was given different terms and conditions of employment, and expected to meet unrealistic deadlines (although the allegedly unrealistic deadline appears to have been assigned by Nadeau prior to the filing of the EEOC complaint).[9] It could reasonably be inferred that Good was assigned different terms and conditions of employment in retaliation for reporting the alleged misconduct and that Falvey was using these terms as a pretext for disciplining Good or forcing him to resign.[10] It is also plausible that through the racial slurs and threats included in the notes, Good was subjected to a hostile work

---

[8] On January 25, 2018, Good forward Greene an email stating, "[this] is an email threat in regards to my last face-to-face meeting with Katie. During this meeting is where her discrimination ballooned to what I consider as a hostile work environment . . . ." (#1-2 at 8.)

[9] As mentioned above, on February 8, 2018, Good complained to Concepcion that, where he had previously submitted weekly reports of the days and times he coached Bay Cove clients, Falvey wanted him to report daily and "to be more specific as to the exact time, exact travel time to and from each client." (#1-2 at 15.) Good questioned whether Falvey's request was "a retaliatory act for making [his] claim and providing proof of racial discrimination . . . ." *Id.*

[10] On February 9, 2018, Good emailed Concepcion, "What are you going to do to better help with this racially threatening notes and are the actions of Kristen retaliatory for my claims?" (#1-2 at 17.)

environment in retaliation for his protected conduct. *See Posada*, 389 F. Supp.3d at 158 ("Under Chapter VII (and likely under Chapter 151B), as well, subjecting an employee to a hostile work environment can constitute an adverse employment action for purposes of a retaliation claim.").

While the plaintiff must ultimately prove all of the elements for hostile work environment and/or retaliation claims in order to prevail, the initial burden of pleading a claim of discrimination is not onerous and the plaintiff need not establish every element of the prima facie case at the pleading stage. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (as applied to claim under Title VII); *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 39 (2005) (as applied to claim under Chapter 151B); *see also Rodriguez-Vives*, 743 F.3d at 286. Further facts in support of Good's claims of discrimination may be developed through discovery. At this juncture, accepting all factual allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that Good has alleged enough facts to state a plausible claim for retaliation.

C. Constructive Discharge.

Finally, Good contends that he was constructively discharged as a result of the hostile work environment he was forced to endure. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, - U.S. -, 136 S. Ct. 1769, 1776 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)); *Lee-Crespo*, 354 F.3d at 45 (constructive discharge usually refers to "harassment so severe and oppressive that staying on the job while seeking redress . . . is intolerable").[11] To establish constructive discharge, "[a] plaintiff

---

[11] "Massachusetts and federal law are in accord in defining a constructive discharge." *Luciano v. Coca-Cola Enter.*, 307 F. Supp.2d 308, 320 (D. Mass. 2004); *see also Cherkaoui v. City of Quincy*,

must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Green*, 136 S. Ct. at 1777 (citation omitted); *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 522 (1st Cir. 2009) (stating that, for a resignation to be considered a constructive discharge, it "effectively must be void of choice or free will"); *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 28 (1st Cir. 2002). A plaintiff "must also show that he actually resigned." *Green*, 136 S. Ct. at 1777 (citation omitted).

The standard for constructive discharge is an objective one; "it cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held." *Gerald v. Univ. of P.R.*, 707 F.3d 7, 25 (1st Cir. 2013) (quoting *Roman v. Potter*, 604 F.3d 34, 42 (1st Cir. 2010) (internal quotation marks and citation omitted)); *Marrero*, 304 F.3d at 28; *Votolato*, 2018 WL 4696743, at *9. It is not enough that a plaintiff suffered "the ordinary slings and arrows that workers routinely encounter in a hard, cold world." *Cherkaoui v. City of Quincy*, 877 F.3d 14, 30 (1st Cir. 2017) (quoting *Suarez v. Pueblo Intern., Inc.*, 229 F.3d 49, 54 (1st Cir. 2000)).

The alleged hostility in this case occurred in a 20-day period between January 24, 2018, and February 13, 2018. On January 24, 2018, Good informed Greene that Nadeau had discriminated against him. (#1-2 at 6.) Within three business days, on January 29, 2018, Concepcion and Greene met with Good to address his concerns about Nadeau. *Id.* A week after, on February 6, 2018, Falvey, Concepcion, and Andalcio met with Good and proposed to replace Nadeau with Andalcio as Good's new supervisor. *Id.* at 1. Two days later, on Thursday, February 8, 2018, Falvey and Andalcio met again with Good to discuss the start of Andalcio's supervisory relationship. *Id.* Andalcio reassured Good that she was open to working with him and Good

---

877 F.3d 14, 29-30 (1st Cir. 2017) (analyzing constructive discharge under Mass. Gen. L. c. 151B and Title VII together).

indicated he believed her. *Id.* at 10. Yet, Good did not work with Andalcio, as he reported in sick February 12th and February 13th, and then submitted his immediate resignation on February 13th. *Id*. at 18-20. The investigation into the racially-charged notes Good claimed to have received was still ongoing at the time of his resignation.

While the racial slurs from the notes, coupled with the increased supervision, could have created a hostile work environment, those incidents do not amount to working conditions that were so severe that a reasonable person would have felt compelled to resign. *See Luciano v. Coca-Cola Enters., Inc.*, 307 F. Supp.2d 308, 320 (D. Mass. 2004) (A claim of constructive discharge "requires a showing of harassment that is more severe than is required for a hostile work environment claim."). Here, as soon as Good informed HR of the alleged discrimination, Bay Cove immediately addressed the situation. (#1-2 at 20.) Bay Cove opened an investigation, supervisory personnel met with Good on at least three occasions, they offered Good the option to work from home while the investigation was undertaken, and they quickly assigned him a new supervisor. *Id.* Because Good was given the option to relocate, and because his concerns were promptly addressed and the investigation ongoing, the defendant's conduct did not create unbearable working conditions that would have forced a reasonable employee to resign. *See EEOC v. Kohl's Dep't Stores, Inc*., 774 F.3d 127, 134 (1st Cir. 2014) (internal citation and quotation marks omitted) ("a reasonable person would simply not feel compelled to resign when her employer offered to discuss other work arrangements with her"); *Lee-Crespo*, 354 F.3d at 45-46 ("[O]nce [plaintiff] made a complaint, management moved swiftly. There was a meeting, [where plaintiff was] heard, and management moved [plaintiff] away from her nemesis. This undercuts [plaintiff's] claim that she was forced to leave.").

Good has failed to allege sufficient facts to support a claim of constructive discharge, and that claim should be dismissed.

V. Conclusion and Order.

For the reasons above, I RECOMMEND that Bay Cove Human Service's Motion to Dismiss (#7) be allowed with respect to the claim of constructive discharge, and otherwise DENIED.

VI. Review by the District Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of service of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Federal Rules Civil Procedure, shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

February 21, 2020